**BOWATERS SOUTHERN PAPER CORPORATION, Defendant-Appellant,**

v.

**Doyle E. BROWN, Plaintiff-Appellee.**

**No. 13332.**

United States Court of Appeals Sixth Circuit.

April 4, 1958.

Robert C. Hunt, Chattanooga, Tenn., Hunt & Thompson, Chattanooga, Tenn., on brief, for appellant.

Landon H. Gammon, Chattanooga, Tenn., Goins & Gammon, Ward Crutchfield, Chattanooga, Tenn., on brief, for appellee.

Before McALLISTER and STEWART, Circuit Judges, and JONES, District Judge.

McALLISTER, Circuit Judge.

The issue in this case is whether appellee was the employee of appellant, Bowaters Southern Paper Corporation, or the employee of an independent contractor when he suffered certain injuries, for which he brought an action for negligence against appellant. Appellant company claims that he was its employee, and that he is, therefore, limited to his remedies under the Workmen's Compensation Act of Tennessee, T.C.A. § 50–901 et seq., where the accident occurred. Appellee submits that he was the employee of an independent contractor; that he was injured by the negligent acts of appellant company; and that he may, therefore, maintain a common law action against appellant as a third party tortfeasor. The District Court held, as a matter of law, that appellant company was not the employer of appellee, and that it was liable to him for negligence in a common law action. From a judgment entered on a jury verdict in appel-

lee's favor, the Bowaters Company appeals.

Appellant company owns and operates a paper mill. It entered into a written contract with Huffman-Wolfe Southern Corporation to make certain changes and alterations in the mechanical system of its plants. By the terms of the contract, in which appellant was designated as the "Owner" and the Huffman-Wolfe company was designated as the "Contractor," the latter, as contractor, undertook to furnish labor and tools necessary for the installation of new conveyors and turntables in appellant's plant. It further agreed that it would dismantle the existing conveyors and accessories and deliver them to the owner's salvage yard. The dismantling was to be done while the mill was in operation, and the installation was also to be done while the mill was in operation. The Owner agreed to permit the Contractor the use of its facilities for the manually operated overhead crane. The work was to be executed on a cost-plus basis. The Contractor's costs, considered as reimbursable in arriving at the contract price, included the actual wages of the Huffman-Wolfe company's superintendents and foremen, and the wages of all mechanics and laborers which it employed. Moreover, the Contractor's costs, it was agreed, included the payments by the Contractor "to the Federal Insurance Contribution Act [26 U.S.C.A. § 1400 et seq.], Federal Unemployment Tax Act [26 U.S.C.A. § 1600 et seq.] and State Unemployment Compensation which Contractor is actually required by law to pay," as well as the expenses of subsistence and travel of the general supervisory personnel on necessary visits to the job site. In addition, the contract provided that the Huffman-Wolfe company was to furnish comprehensive general liability insurance and workmen's compensation insurance, including employers' liability insurance, in accordance with the laws of Tennessee. Other provisions of the contract do not, in our opinion, modify, in any degree, the provisions above mentioned.

In Conasauga River Lumber Co. v. Wade, 6 Cir., 221 F.2d 312, 315, this court, in a case from Tennessee, involving the question whether a company was an independent contractor, said:

"The classical primary test as to whether a contractor is independent or a mere servant depends upon his right to control the manner and method in which the work he has undertaken to perform is carried on, independent of supervision and direction by his employer. * * * While these are principles not always easy to apply in specific cases, numerous secondary tests are frequently relied upon, among them being whether the contractor is one engaged in a business requiring special skills, whether he controls the hiring and discharging of his help, provides his own equipment, and whether payment is paid by the time or by the job. * * * These are guideposts which may point the way to the right of control. Also of importance is whether or not there has been a written contract * * *."

In Barker v. Curtis, 199 Tenn. 413, 287 S.W.2d 43, 45, the following definition of independent contractor is given:

"One who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result."

Appellee was employed by the Huffman-Wolfe company. He was paid by that company, and he did his work under the direction and supervision of that company. The Huffman-Wolfe company

was not an employee of appellant company. It was engaged in the mechanical contracting business, and had its own tools and equipment. In this case, it contracted for a specific project. It was to perform, and did perform, the work in its own manner, with its own labor, directed by its own supervisors and foremen. It hired and discharged its own men. It was paid for the entire job, and not on a time basis. All of these circumstances satisfy the tests that determine that the Huffman-Wolfe company was an independent contractor, and not the servant or employee of appellant company.

 Appellant raises an interesting question as to whether the trial court was in error in holding that extrinsic evidence could not be introduced to show the relationship of the parties, and to vary the written terms of the contract. In Tennessee "the Parole Evidence rule does not apply in litigation between one or more parties to the written instrument and a stranger, * * * but only applies to litigation between the parties and their privies." Swift v. Beaty, 39 Tenn.App., 292, 282 S.W.2d 655, 658. In the instant case, the suit was not between the original parties to the agreement, but between one of the parties and an employee of the other. Whether the Tennessee rule applies to such a case presents a nice problem. But we are not required to determine that question. The District Judge, a judge of long experience and wisdom, appears to have considered that the parole evidence rule would apply in the given circumstances; but he made no ruling excluding any parole evidence that might vary the terms of the written contract, and allowed the various witnesses to answer the questions asked of them in this regard. The result was that none of the evidence or testimony disclosed a variation of the terms of the written contract by any contemporaneous or subsequent parole agreements or understandings. As the trial court said at the conclusion of the proofs: "I have not heard any competent or incompetent evidence to my belief, that would vary, or alter, or change this written contract."

 The interpretation of the written contract was for the trial court to determine, as a matter of law. The court held that appellant company was not the employer of appellee. Appellee, accordingly, had the right to maintain his common law action for negligence against appellant.

No error appearing, the judgment of the District Court is affirmed.